THE BELT RAILWAY COMPANY OF CHICAGO

*v.*

WILLIAM F. CONFREY.

*Opinion filed April 20, 1904.*

1. EVIDENCE—*when proof that freight car had no grab-iron is not a variance.* Proof that a box-car had no grab-iron is properly received under an averment of the declaration charging the defendant with negligently permitting the "devices and appliances necessary and used for and in aid of coupling to be and remain in an unsafe, dangerous, incomplete and defective condition."

2. SAME—*what competent to show that draw-bar had too much lateral play.* As tending to prove that a certain draw-bar had too much lateral play, it is proper to show the average play of draw-bars in that make of couplers, and that certain retaining bolts and ferules, which would have restrained the play of the draw-bar, were missing from the one in question.

3. RAILROADS—*belt railroad should inspect condition of cars it transfers.* A belt railroad company engaged in transferring cars of other railroads must exercise reasonable care to ascertain if such cars are in reasonably safe condition to be handled by its employees.

4. SAME—*effect where car has no inspection mark.* That the mark customarily placed by the defendant's car inspector upon inspected cars was not upon the car which plaintiff attempted to couple does not necessarily make such attempted coupling an act of contributory negligence.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. G. W. PATTON, Judge, presiding.

EDGAR A. BANCROFT, for appellant.

JAMES W. DUNCAN, and C. LEROY BROWN, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The action below was case by the appellee to recover damages for personal injuries sustained by him by reason of the alleged negligence of the appellant company. Judgment was entered in favor of the appellee in the su-

perior court of Cook county, and the same was affirmed
by the Appellate Court for the First District.   This is
an appeal from such judgment of affirmance.

The appellant company operates a connecting line of
railway engaged exclusively in transferring freight cars
belonging to other railroads or transportation companies
to and from certain railroads which enter the city of
Chicago and to and from certain industries in that city.
The appellee was in its employ as a switchman, and on
the 27th day of August, 1899, while attempting to couple
a coal-car to a box-car, received the injuries for which
the action was brought.   The coal-car had a "Janney,"
"Master car builder's" or "Tower" coupler.   The box-car
had an old style "link-and-pin" draw-bar and coupler.

The appellee was permitted, over the objection of
the appellant company, to introduce proof showing that
the box-car was not provided with a "grab-iron" at the
end of the car when the coupling was being made, and
that the lack of such grab-iron contributed, in part, to
his injury.   It is complained that the declaration did not
charge that the appellee's injuries resulted from or were
contributed to by the lack of such grab-iron.   The first
and second amended counts of the declaration alleged
that the appellant company "negligently and carelessly
handled said car upon which the draw-bar and *appliances*
and devices necessary and used for and in aid of coup-
ling were in a dangerous, defective and unsafe condition,
and the said defendant carelessly and negligently per-
mitted the said car, and the said draw-bar and said de-
vices and appliances necessary and used for and in aid of
coupling, to be and remain in an unsafe, dangerous, in-
complete and defective condition."   The evidence showed
that one of the purposes to be served by a grab-iron was
to aid switchmen in coupling and uncoupling the cars.
The averments of the declaration were therefore suffi-
ciently comprehensive to warrant the admission of the
testimony.

Appellee claimed that when the cars came together to be coupled, the draw-bar of the box-car moved too far to the west of the Janney coupler, thus permitting the two cars to come together and crush and injure him. Evidence was produced by the appellee tending to show that the draw-bar had a lateral play of from four to six inches, and, over the objection of the appellant, the appellee was permitted to prove the ordinary or average play of draw-bars in that make of car couplers. We think the proof so objected to was proper. It tended to show a defective condition of the coupler. Other testimony objected to by the appellant company, in substance, that there were no ferules on certain bolts, which, had they been present, would have reduced the play of the draw-bar, and still other evidence that there were no "retaining bolts" in the coupler, which, had they been present, would have restrained the play of the draw-bar, (also objected to,) was properly admitted. It was the duty of the appellant company to inspect the cars which it transferred with reasonable care, in order to ascertain whether they were reasonably safe to be handled and coupled by its employees. The evidence tended to show that a reasonable examination of the coupling appliances on the box-car would have disclosed that the draw-bar had too much lateral play.

The complaint that the court admitted hearsay testimony is groundless. The statement referred to as hearsay was for the purpose of impeachment of the witness whose statement out of court was proven as being contradictory to his testimony as a witness.

We have considered the complaint that the conduct and remarks of the trial judge interfered with a fair and impartial hearing of the cause. In the main, this objection relates to a colloquy between court and counsel, arising out of the persistent insistence of counsel for the appellant that the averments of negligence in the declaration were not broad enough to admit proof that no

grab-irons were on the box-car.   The court was clearly right in the ruling made, and though it may be that while announcing the ruling and in stating the reasons therefor, during which there were interruptions by counsel, the court indulged in expressions that might well have been omitted, we find no reason justifying the declaration that a fair and impartial hearing was at all affected by what occurred.

Counsel for the appellant presses with great vigor the complaint that the court erred in refusing to peremptorily direct the jury to return a verdict for the defendant. The first ground of this motion, which was that the plaintiff relied for recovery largely upon the alleged want of a grab-iron on the box-car, and that the declaration did not authorize any such ground of recovery, has been considered in passing upon the admissibility of the evidence and determined adversely to the appellant.

The second ground urged in support of this alleged error of the court is, that the evidence wholly failed to show that the plaintiff's injuries were due to any breach of duty which the appellant company owed to the switchman.   It was the duty of the appellant company, as its counsel concedes, to cause the cars which its employees were expected to transfer on its tracks to be inspected with reasonable care, in order that its employees might not be subjected to the danger of injuries from defective or insufficient appliances for coupling the cars together. The declaration alleged the failure to perform this duty of inspection with reasonable care, and the evidence tended to show that the box-car in question was not inspected at all. The inspector employed by the appellant company, and who appeared as a witness in its behalf, testified as to the proper mode and manner of inspection. He stated that the inspector should go round each car, examine the draw-bars, the draw-timbers, the sills, the ends of the car, the trucks, the sides of the car, the side doors and the brakes.   The evidence further tended to

show that a reasonably careful examination of the coupling appliances would have disclosed to the inspector that the draw-bar of the box-car was not in order,—was too loose and had too much lateral play,—and also would have disclosed that there was no grab-iron on the car. There was therefore evidence so far tending to support the charge of negligence as to make the determination of that issue a question of fact for the jury.

The third ground upon which the court was asked to peremptorily instruct the jury is, that the injury to the plaintiff resulted from his own want of care. The evidence tended to show the plaintiff performed the work of coupling the cars in the ordinary and usual way in which prudent switchmen do such work. The evidence so tending to show this, consisted not only of proof of the acts of the appellee, but also of the testimony of expert and experienced switchmen. It was the custom of the car inspector of the appellant company to place marks on each car inspected by him, and on the car in question there were no such marks. The appellee observed that the car did not bear such marks before, or just as, he stepped between the cars to make the coupling, and it is urged that it was contributory negligence on his part to attempt to couple a car which he knew had not been inspected. The appellee was acting under the general instructions or orders of the appellant company to couple the cars together. He knew, of course, either that the box-car had not been inspected or that the inspector had failed to place his mark upon it. Finding no mark there did not necessarily mean that the coupling appliances of the car were defective or dangerous. It meant no more, at the most, than that the car had not been inspected. Nevertheless, the coupling and its appliances might be entirely safe. There was no defect in the coupling that was open to view. There was no grab-iron, but he did not observe that such was the case until he saw that the draw-bar of the box-car had

slipped past the "knuckle" of the Janney coupler of the coal-car, at which time he sought to take hold of the grab-iron to save himself from injury and thus learned that there was none on the car. The case is not one where the employee voluntarily encounters the hazards of a known danger. The law has no rule declaring, as a matter of law, what a prudent and careful workman should do in the situation in which the appellee was placed. That was for the jury to determine, under proper instructions from the court.

The sole complaint of the rulings of the court in instructing the jury is, that certain of the instructions asked by the appellant company were modified by the court. The only modifications of any importance were of instructions in which the appellant company sought to have the court advise the jury that if the appellee had "equal means" with the appellant company, or "as favorable opportunity" as had the company, to know and learn of the alleged defective condition of the coupling, the law would not permit a recovery in the case. These instructions, as modified, directed the jury, in substance, that if the appellee, before he attempted to make the coupling, could by the exercise of ordinary care have observed or become advised of the condition of the drawbar and grab-iron, he could not recover. The duty of inspecting the cars rested upon the company. It had ample time to make the inspection and every opportunity to discover the defects, both such as were obvious and such as could only be ascertained by strict or close inspection. The appellee had to act under the pressure of great haste, with no opportunity to observe other than the most obvious defects. There was no evidence tending to show the appellee and the appellant company had "equal means" or like "favorable opportunities" to ascertain the condition of the coupling and the appliances in aid thereof. There being no proof tending to establish that test of appellee's right of recovery, the court

correctly declined to give the instructions as asked. As modified, the duty and obligation of the appellee and of the appellant company were correctly declared; as asked, the duty of inspection was erroneously cast equally upon the appellant company and the appellee.

The judgment must be and is affirmed.

*Judgment affirmed.*